UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| VIRGIL G. OWENS, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:06-cv-473 |
| | ) | |
| v. | ) | Honorable Wendell A. Miles |
| | ) | |
| CARMEN D. PALMER, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## **OPINION**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I.        Factual Allegations

Petitioner is currently incarcerated with the Michigan Department of Corrections (MDOC) at the Deerfield Correctional Facility. In 1998, he pleaded *nolo contendere* to second-degree criminal sexual conduct (CSC), MICH. COMP. LAWS § 750.520c(1)(a), in the Calhoun County Circuit Court. On October 9, 1998, the circuit court sentenced him to 2 ½ to 15 years incarceration. In May 2000, the MDOC Bureau of Health Care denied Petitioner admittance to the Sex Offender Group Psychotherapy Program (SOP) because Petitioner was "not ready for treatment" due to his difficulty "being honest with himself and others" regarding his CSC offenses. Pet. App. A. At the time of the SOP denial, the MDOC informed Petitioner that when he was ready to be honest about his offenses, he would be accepted for treatment. Pet. App. A. Between 2001 and the present, Petitioner has also been denied parole six times. Pet. at pp. 5-6 and App. C. The present petition concerns his most recent parole denial on June 5, 2006.

In its June 5, 2006 denial, the Michigan Parole Board continued Petitioner's incarceration for 24 months because it lacked reasonable assurance Petitioner would not be a threat to society if he was released on parole. Pet. App. B p. 1. The parole board specifically found that "[Petitioner] denies crime, yet pled guilty to it. [Petitioner] needs to take responsibility for the crime, gain insight into his criminality, take SOP to reduce risk of recidivism. Departure warranted." Pet. App. B p. 1. The board further noted that Petitioner's sexually-motivated crime involved a minor child victim who was a family member or friend and violated a position of trust or authority. Pet. App. B p.1.

In his *pro se* petition for habeas relief, Petitioner sues Deerfield Warden Carmen D. Palmer for detaining him in violation of his constitutional rights. He argues that the June 5, 2006 parole denial violated his Fifth Amendment right against self incrimination because it was based on his refusal to admit guilt. He further maintains that the parole denial violated his Fourteenth Amendment right to equal protection because parole has been granted to other CSC inmates who, like him, refused to admit their guilt and/or have not participated in SOP. Aside from his constitutional claims, Petitioner also argues that the parole board should not have based its denial on the incorrect fact that he "pled guilty" to CSC, when in fact he pleaded *nolo contendere*.

For relief, Petitioner requests that the Court order the MDOC to release him on parole, or, in the alternative, that the Court order the parole board to re-interview Petitioner while retaining jurisdiction over this action.

II.     Exhaustion of State Court Remedies

Before this Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claims. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to

resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

As Petitioner points out in his application, recent statutory and rule amendments by the Michigan Legislature and Michigan Supreme Court, respectively, have removed a prisoner's ability to appeal a parole denial under state statute. The former version of MICH. COMP. LAWS § 791.234(8) provided that the grant or denial of parole by the Michigan Parole Board could be appealed to the circuit court by the prisoner, prosecutor or victim. *See* MICH. COMP. LAWS § 791.234(8) (West. 1999). The new version eliminated the ability of a prisoner to appeal a parole denial, and provides only that a grant of release on parole may be appealed by the prosecutor or the victim. *See* MICH. COMP. LAWS § 791.234(9) (as amended by 1999 Mich. Pub. Acts 191). The legislation was approved on November 24, 1999. Following the lead of the Michigan Legislature, the Michigan Supreme Court amended Michigan Court Rule 7.104, effective March 10, 2000, eliminating the provisions regarding the methods by which a prisoner could appeal a parole denial. *See* MICH. CT. R. 7.104(D)(1), (2)(a).

The Sixth Circuit Court of Appeals has held that a Michigan petitioner's failure to exhaust his equal protection challenge to parole procedures is excused under 28 U.S.C. § 2254(b)(1)(B)(I) because Michigan law does not provide a state corrective process for such a claim. *Jackson v. Jamrog,* 411 F.3d 615, 618 (6th Cir. 2005).[1] Consequently, because state statute prohibits a prisoner from appealing a parole denial, Petitioner appears to have no available state court remedy in which to exhaust his claims. Even if he did have a method to challenge the decision,

---

[1] Certain types of parole denial claims involving radical defects in legal process (which Petitioner does not allege here) may be cognizable in state habeas corpus proceedings or by complaint for an order of mandamus. *Jamrog,* 411 F.3d at 621; *see also Morales v. Mich. Parole Bd.,* 676 N.W.2d 221, 229-30 (Mich. Ct. App. 2003).

such as a state writ of habeas corpus or mandamus, *see Morales,* 676 N.W.2d at 229-30, the Court may still deny his action on the merits. *See* 28 U.S.C. § 2254(b)(2).

    III.    <u>Merits</u>

Neither of Petitioner's two bases for habeas corpus relief states a meritorious federal claim.

    **A.**    **Fourteenth Amendment right to due process**

Petitioner alleges that he was denied parole in violation of his Fifth and Fourteenth Amendment rights. Although he does not specifically allege a violation of his due process rights, the Court notes as an initial matter that Petitioner has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so, and thus, the presence of a parole system by itself does not give rise to a constitutionally-protected liberty interest in parole release. *Id.*; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan procedural authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole. *See Ward v. Steagall*, No. 03-1804, 2004 WL 614581, at *1 (6th Cir. Mar. 24, 2004); *Martin v. Ohio Adult Parole Auth.*, No. 03-3642, 2003 WL 22976604, at *1 (6th Cir. Dec. 8, 2003); *Bullock v. McGinnis*, No. 00-1591, 2001 WL 180978, at *2 (6th Cir. Feb. 14, 2001); *Turnboe v. Steagall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19,

2000); *Irvin v. Mich. Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999).

In unpublished decisions, the Sixth Circuit has also held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Mich. Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990).

Finally, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999). Accordingly, Petitioner has no liberty interest at stake. Because he has no liberty interest at stake, Petitioner cannot state a claim for a violation of his due process rights. *See Sweeton*, 27 F.3d at 1164-65.

In light of Petitioner's lack of a liberty interest in being released on parole, his allegation that the board relied on false information to deny his parole (Pet. p. 5) fails to state a claim. Even if the parole board relied on the inaccurate fact that Petitioner had pleaded guilty to CSC, when in fact he pleaded *nolo contendere*, his claim does not present any constitutional violation. *See Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996) (no constitutional violation by having false information placed in a prison file); *Carson v. Little*, No. 88-1505, 1989 WL 40171, at *1 (6th Cir. Apr. 18, 1989) (inaccurate information in an inmate's file does not amount to a constitutional violation). Because Petitioner has no liberty interest in being paroled, he cannot show that the false information was relied upon to a constitutionally-significant degree. *See Maiden v. Johnson*, No. 98-1479, 1999 WL 507207, at *1 (6th Cir. June 10, 1999);

*Draughn v. Green*, No. 97-1263, 1999 WL 164915, at *2 (6th Cir. Mar. 12, 1999); *Perotti v. Marshall*, No. 85-3776, 1986 WL 16695, at *1 (6th Cir. Mar. 14, 1986).

### B.     Fifth Amendment right against self-incrimination

Petitioner alleges that his right against self-incrimination was violated when he was denied parole as a result of his refusal to admit guilt to the parole board. Pet. ¶¶ 8-10; pp. 5-6, 10-12. This assertion is without merit.

It is well-settled that the Fifth Amendment right against self-incrimination is not implicated by the alleged pressure on a prisoner to admit, in order to improve his chances for parole, that he committed the crime(s) for which he is incarcerated. *See Hawkins v. Morse,* No. 98-2062, 1999 WL 1023780, at *2 (6th Cir. Nov. 4, 1999) (citing *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 285-88 (1998)). *See also Rice v. Mich. Parole Bd.*, No. 1:05-cv-549, 2005 WL 2297463, at *3-4 (W.D. Mich. Sept. 21, 2005) (Fifth Amendment extends only to proceedings in which answers might incriminate the individual in *future* criminal proceedings; therefore refusal to admit to crimes of which prisoner had already been convicted did not implicate Fifth Amendment) (emphasis in original). Therefore, the parole board's consideration of Petitioner's remorse (or lack thereof) for the criminal sexual conduct to which he pleaded *nolo contendere* in 1998 did not violate his Fifth Amendment rights.

### C.     Fourteenth Amendment right to equal protection

Petitioner next argues that his equal protection rights were violated because similarly-situated CSC prisoners have been granted parole. Pet. ¶¶ 7, 9-10; 5-10. To support this claim, Petitioner attaches to his application a list of thirty "inmates that have been released without therapy, in denial, and on their minimum sentence." Pet. at 8-9 and App. E. For each of the thirty inmates listed, two or more of the following five facts are listed: (1) that the inmate was incarcerated for CSC; (2) that the inmate never had any group therapy; (3) that the inmate maintained his innocence; (4) that the inmate did not serve all of his sentence; and/or (5) that the inmate was released on

parole. Pet. App. E. In his application Petitioner also cites the case of inmate William Hackel who, despite his refusal to admit guilt for his CSC conviction or to participate in SOP, was released on parole after his first parole interview. Pet. pp. 8-9.

An equal protection claim arises when similarly situated persons are treated differently by a government entity without adequate justification. *Reffitt v. Nixon*, 917 F. Supp. 409, 414 (E.D. Va. 1996). Petitioner's claim does not establish an equal protection violation for two reasons. First, he does not offer proof that inmate Hackel, or any of the other listed CSC inmates who have purportedly been granted parole, "were similarly situated to [Petitioner] in *all respects that are material to the parole assessment.*" *See e.g. Barker v. Conerly,* No. Civ. 05CV74408DT, 2006 WL 305643, at *3 (E.D. Mich. Feb. 9. 2006) (citing *Linger v. Akram*, 23 F. App'x 248, 252 n.5 (6th Cir. 2001)) (emphasis added). Petitioner unwittingly underscores this point by stating that the parole board found that Hackel, unlike Petitioner, had shown "considerable remorse" for his crime. Pet. p. 9. In light of "the number of factors that a parole board must consider in determining whether to grant a prisoner parole release," *see Barker*, 2006 WL 305643, at *3, and the absence of evidence showing that Petitioner and all thirty-one CSC inmates he lists were similarly situated in all relevant respects, he fails to state an equal protection claim.

Second, Petitioner has not shown that he was victimized by the parole board because of some suspect classification, as is also required for an equal protection claim. *See, e.g., Lovely v. Hughes*, No. 96-5536, 1997 WL 112386, at *1 (6th Cir. Mar. 12, 1997) (affirming district court's dismissal of § 1983 claim alleging that denial of plaintiff's parole violated Fourteenth Amendment right of equal protection because similarly-situated prisoners were granted parole) (citing *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir.1992)).

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because he fails to state a constitutional claim for habeas relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10, 15 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490, 492 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of the State of N. Y.*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of petitioner's claims. *Id.*

The Court finds that reasonable jurists could not find that this Court's dismissal of Petitioner's claims was debatable or wrong. It is well-settled that there is no liberty interest in parole. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment consistent with this Opinion will be entered.

Dated:  July 31, 2006                                  /s/ Wendell A. Miles
                                                                Wendell A. Miles
                                                                Senior U.S. District Judge